IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GATX CORPORATION,

        Plaintiff,

v.

GEORGIA POWER COMPANY,

        Defendant.

Civil Action File
No.: 1:19-cv-04790-AT

## CONSOLIDATED/JOINT DISCOVERY STATEMENT

### I.    GATX refuses to produce documents on the condition of other railcars.

**A.    Georgia Power Company's "GPC" Position:** GATX refuses to produce "documents from January 1, 2007 to present referring to, evidencing, or reflecting corrosion on steel railcars owned by GATX and used to transport gypsum or limestone."[1] GATX also refuses to suggest any alternative scope. GPC requests the Court order GATX to produce all responsive documents. The condition of similar railcars is relevant to the issue of "ordinary wear and tear," which is central to this dispute.[2] *See, e.g., Weeks Marine v. John F. Picone, Inc.*, 96 Civ. 5948 (RLC), 1998 U.S. Dist. LEXIS 15053, at *15 (S.D.N.Y. 1998). GATX propounded extensive discovery on GPC related to the same subject matter.[3] GPC is entitled to the same. *See Moser v. Health Ins. Innovations,*

---

[1] *See* Jan. 4, 2021 Campbell Letter to Gekas; excerpt attached at Ex. A.
[2] (*See* Complaint [ECF No. 1], ¶ 3; Answer [ECF No. 10], ¶ 1.)
[3] *See, e.g.,* GATX 2019 RFP Nos. 13, 14, 17, 18; GATX 2019 Interrogatory No. 16; excerpts attached as Ex. B.

*Inc.,* No. 17CV1127-WQH(KSC), 2019 WL 2271804, at *16 (S.D. Cal. May 28, 2019).

GPC has served nonparty discovery on this subject, but that does not absolve GATX of its discovery obligations. *See Green v. Barrett*, No. 1:04-CV-14-MHS, 2005 WL 8154470, at *3 (N.D. Ga. Jan. 6, 2005). The nonparties have objected that they should not bear the burden of producing documents in GATX's possession, custody, or control and that their document retention policies would have deleted responsive documents. Nonparty Martin Marietta Materials ("MMM") objected in light of a confidentiality agreement with GATX.  GATX will not consent to MMM's production of documents. The Court already has entered a Stipulated Protective Order [ECF No. 25]; confidentiality is not a justification for refusing to produce documents. *See Ripberger v. Corizon, Inc.*, No. 1:11-CV-01394-TWP, 2012 WL 4340716, at *3 (S.D. Ind. Sept. 20, 2012).

**B.**   **<u>GATX's Response</u>**: Rule 26(b)(1) is clear that to be discoverable, information must be <u>both</u> relevant to any party's claim or defense <u>and</u> proportional to the needs of the case. *See, e.g., In re Arby's Restaurant Group Inc. Litigation*, 2018 WL 8666473, at * 1 (N.D. Ga. Aug. 16, 2018) ("But under the recent Amendments to Rule 26(b), the traditionally liberal limits on discovery must be juxtaposed against proportionality considerations in a given case and the Court's obligation to determine, on a case-specific basis, the appropriate scope of discovery."). GATX respectfully submits that discovery into other GATX customers is outside the permissible scope of

2

discovery for both reasons: it is neither relevant nor proportional to the needs of the case.

Discovery of other GATX customers is not relevant because Georgia Power is liable for the corrosion damage at issue under the plain terms of this Lease. There is no dispute that Georgia Power's use of the Cars to transport limestone is what caused the extensive corrosion damage at issue – in some cars, metal loss to the body in excess of 40%. Indeed, that is the tacit admission for Georgia Power's attempt to justify this discovery. Under its Lease, however, Georgia Power is liable for such damage. For example, Section 9.1 of the Master Lease is titled "Risk of Loss; Damages." It states in part that Georgia Power "shall bear all risk of, and be solely responsible for, any…destruction and damage of or to each Car, **however caused**." (*See* Master Lease § 9.1 (Dkt. #1-1) (emphasis added).) Moreover, Supplement Nos. 2 and 3 include Georgia Power's express representation that it would not load a corrosive commodity in the cars: "Lessee will use the Cars for aggregate service. Lessee represents that such lading is a non-corrosive, non-placarded commodity." (*See* Supplement Nos. 2 and 3 at ¶ 5 (Dkt. #1-2 and #1-3).) Georgia Power's corporate representative admitted that this language means what it says:

```
Q.   And the first sentence says "Lessee will use
     the cars for aggregate service"; right?

A.   Yes.

Q.   And the second sentence says that lessee
     represents that such [commodity] is a
     noncorrosive, non-placarded commodity; right?
```

**A.    Yes.**

Q.    So that means that Georgia Power is
representing that it was not placing a
corrosive or placarded commodity in the car;
right?

MS. CAMPBELL: Object to the form.

**THE WITNESS: Yes.**

(Exhibit 1: Excerpt of 30(b)(6) Deposition (Christine Lewter) at 110:09 – 20.)

Given this admission, Georgia Power's attempt to litigate other customers' experiences is "the proverbial fishing expedition." *Jewell v. Aaron's, Inc.,* 2013 WL 3770837, at * 3-4 (N.D. Ga. July 19, 2013). Those experiences do not change the plain terms of the Lease: "Under New York contract jurisprudence, the intent of the parties controls and if an agreement is "complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Beardslee v. Inflection Energy, LLC,* 31 N.E.3d 80 (NY Ct. App. 2015) (citation omitted). Thus, GATX's other customers are irrelevant to Georgia Power's liability under this Lease.

The second reason that this discovery is outside the scope of Rule 26(b)(1) is that any theoretical relevance is far outweighed by the burden, cost, and delay. GATX's North American fleet alone is more than 118,000 railcars.[4] So permitting Georgia

---

[4] This is why GATX's leases make the customer responsible for its commodities. With a fleet of 118,000 cars, it would be unreasonable and uneconomical (if not literally impossible) for GATX to be responsible for its customer's commodities because the customer is best positioned to monitor the chemical properties of its own commodities and its own processes for transporting them.

Power's pursuit of a fishing expedition in spite of the plain Lease terms will unfairly impose burden, expense, and delay on GATX.[5] And the burden of such discovery is not merely limited to producing documents: it will require GATX to litigate each individual case of corrosion in order to demonstrate why the unique facts of other cases cannot be applied to this case. In other words, it will send this case down a long and expensive rabbit hole. A rabbit hole that is unnecessary given Georgia Power's aforementioned admission that the Lease means what it says. Accordingly, GATX respectfully submits that Georgia Power's pursuit of other customer's corrosion experiences is disproportionate to the needs of the case and outside the scope of Rule 26(b)(1). *In re Arby's,* 2018 WL 8666473 at * 1.

C. **GPC's Reply**: GATX's primary allegation is: "Georgia Power's use of the Cars has caused substantial corrosion damage ***that is not ordinary wear and tear*** and for which Georgia Power is responsible for under the lease." (Compl., ¶ 3 (emphasis

_____

Further, the composition and properties of natural products mined from the earth can vary greatly. So a term like "limestone" can be misleading. To illustrate with an example, coal mined from the Illinois Basin is significantly more corrosive than coal mined from the Powder River Basin in Wyoming. Georgia Power's 30(b)(6) representative, Christine Lewter, admitted this phenomenon with respect to coal. (Exhibit 2: Excerpt of 30(b)(6)Deposition (Christine Lewter) at 148:16 – 149:06.) But when asked if it is also true of limestone, Ms. Lewter claimed "I don't know." (*Id.* at 149:18 – 150:04.) Yet this is precisely why the Lease made Georgia Power responsible for monitoring its own commodity because Georgia Power was best positioned to do so.
[5] At this point, allowing discovery into GATX's other customers would likely necessitate an extension of discovery.

added).)[6] The condition of other steel railcars used to carry gypsum or limestone helps define "ordinary" and "normal" and is highly relevant, as evidenced by GATX's discovery on the same subject matter. Moreover, GATX fails to mention that:

- GPC has—for months—attempted to meet and confer with GATX to identify a less burdensome scope, with absolutely no compromise from GATX.

- GATX assigns product codes (in this case "HES0001") and other identifying tags (*e.g.*, customer, commodity, manufacturer, and build date) to railcars in its databases, rendering a search for railcars like those in this case relatively simple.

- GPC already has identified at least two other sets of railcars responsive to GPC's request—involving customers Martin Marietta Materials and Vulcan.

## II.   GATX has not produced documents related to Finite Element Analysis.

A.   **GPC's Position:** Finite Element Analysis[7] ("FEA") is highly relevant to evaluating GATX's $11 million in claimed damages, based on the alleged cost of repairing the railcars at issue. (*See* Compl., ¶¶ 45, 52, 55; GATX's Initial Disclosures, ¶ 6.) GATX undertook FEA to determine how to repair the alleged corrosion at issue and concluded that the railcars at issue in this dispute ("Cars") required only "minor reinforcements." GATX still has not produced the FEA supporting native files. GPC requests that the Court order GATX to produce all documents related to any FEA

---

[6] Section 8.2 of the Master Lease at issue in this case provides: "Lessee shall return the Cars to Lessor . . . in the same operating condition . . . as when initially delivered to Lessee, ***ordinary wear and tear excepted*** . . . ."  (*See* Compl., ¶ 23.)

[7] Finite Element Analysis is a computer method that employs algorithms to assess a structure's design, performance, and conditions for potential structural failure.

conducted on the Cars—including, but not limited to: (1) 3-D Computer-Aided Design (CAD) files, such as SolidWorks files, STEP (.stp) files, or Parasolid files for the subject railcars, (2) all files related to the structural analyses of the cars using FEA including ANSYS files or other simulation software (inputs and results files), and (3) results, reports, and communications related to the FEA models and stress analyses.[8]

**B.    <u>GATX's Response</u>:** Although Georgia Power's description of the FEA is inaccurate and reveals a misunderstanding of what the FEA is (and is not), regardless, the document that Georgia Power is looking for has already been produced and is bates-stamped GATXvGP008608. As GATX has already informed Georgia Power, there is some ancillary data related to the FEA that does not exist in "document" form. The volume of such data, however, is quite large. GATX is working on producing it, which it hopes to do by March 5.

**C.    <u>GPC's Reply</u>:** FEA is not a stand-alone document; it is complex algorithmic computer analysis derived from a series of native files (including CAD files, .stp files, and ANSYS files). GPC has informed GATX repeatedly GATXvGP008608 (a 22-page PDF) does not constitute the discovery sought.

## III.   GATX has produced no communications with National Steel Car Limited.

### A.    <u>GPC's Position:</u>

---

[8] *See* GPC RFP No. 10, attached at Ex. C.

The Cars were manufactured by National Steel Car Limited ("NSC"). On May 7, 2018, GATX wrote GPC: "Coast [sic] to rebody the cars are $70k per car. National Steel has no interest in re-bodying their cars. . . ." GATX has not produced a single communication it had with NSC. GPC requests that the Court order GATX to produce all its communications with NSC regarding the Cars.[9]

**B.    GATX's Response:** Contrary to Georgia Power's suspicions, extensive written communications with National Steel Car do not exist. Unfortunately, Georgia Power refuses to accept that representation. GATX can provide sworn declarations from the relevant custodians that to the best of their belief, all responsive documents have been turned over, but respectfully submits that such a step should be unnecessary. GATX has invited Georgia Power to use depositions as an opportunity to question GATX's witnesses about documents in their custody.

**C.    GPC's Reply:** GATX has produced *no* communications with NSC and has not provided a straightforward response as to whether any such communications exist. GPC will accept a written certification that from November 1, 2017 to present, there have been no written communications between GATX and NSC regarding the Cars.

**IV.    GATX has not produced documents identifying replacement value.**

**A.    GPC's Position:** Following GPC's return of the Cars to GATX, the

---

[9] *See* GPC RFP No. 11, attached at Ex. C.

8

majority were re-leased, including 41 re-leased to the Branford Steam Railroad Company ("Branford").[10] A Branford document production revealed GATX represented that the Cars have replacement values of $58,222 to $59,010 per car (GATX is seeking $70,000 per Car in damages). GATX has not produced any documents regarding replacement values of the Cars after they were returned by GPC. GPC requests that the Court order GATX to produce all such documents.[11]

B.  **GATX's Response:** Although it is unclear what Georgia Power means by "replacement value," if Georgia Power understands the context in which the term "DV" is used under American Association of Railroads (AAR) Interchange Rule 107, and/or what "missing" documents that Georgia Power believes to exist, GATX believes it has already produced documentation of its damages claim: namely, a cost proposal to rebody the Cars for approximately $70,000 per Car.

As GATX's witnesses will testify at trial, a rebody of the Cars is necessary from both an engineering and safety perspective because of the extensive corrosion damage resulting from Georgia Power's use of the Cars. GATX acknowledges that Georgia Power disputes a re-body is necessary. But the fact that a re-body costs approximately $70,000 per Car is not subject to a reasonable dispute.

C.  **GPC's Reply:** The term "replacement costs" is a quote from a request by

---

[10] Certain of the railcars may have been re-leased more than once.

[11] *See* GPC RFP No. 6, attached at Ex. C.

a Branford representative seeking information from GATX for insurance purposes.

**V.     GATX has not produced certain descriptions and pictures of the railcars.**

**A.     <u>GPC's Position</u>:** Branford indicated it sent GATX (Michael Menz) pictures and descriptions of the Cars it leased, which have not been produced. GPC requests that the Court order GATX to produce all pictures, communications, and documents evidencing the condition of the Cars at the beginning of the Branford, Union Pacific, NHNC, and Javelin leases and any other leases of the Cars after GPC returned them.[12]

**B.     <u>GATX's Response</u>:** In connection with resolving this particular issue, GATX had the custodian at issue perform another search and he located the email in question, which he had inadvertently overlooked by mistake. Those files will be produced by March 5, which GATX believes should resolve this issue. GATX has also asked this custodian to re-search his files to ensure that no more emails are overlooked.

**C.     <u>GPC's Reply</u>:** GATX's addresses a single custodian (Michael Menz), a single e-mail, and a single customer (Branford)—but fails to respond to the full scope of GPC's request, which requires GATX to produce all pictures, communications, and documents evidencing the condition of Cars at the beginning of the Branford, Union Pacific, NHNC, and Javelin leases.

---

[12] *Id.*

This 9th day of March, 2021.


*s/ John Gekas*

John C. Gekas
john.gekas@saul.com
Elizabeth A. Thompson
elizabeth.thompson@saul.com
SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark Street, Suite 4200
Chicago, IL 60601
Telephone:  312.876.7100

James W. Cobb
Georgia Bar No. 420133
jcobb@caplancobb.com
T. Brandon Waddell
Georgia Bar No. 252639
bwaddell@caplancobb.com
Caplan | Cobb LLP
75 Fourteenth Street NE, Suite 2750
Atlanta, GA 30309
Telephone:  404.596.5601

*Attorneys for Plaintiffs*

*s/ Kathleen Campbell*

Thomas E. Reilly
Georgia Bar No. 600195
tom.reilly@troutman.com
Kathleen Campbell
Georgia Bar No. 839699
kathleen.campbell@troutman.com
Thomas Bailey
Georgia Bar No. 194516
matt.bailey@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street, NE
Atlanta, GA  30308-2216
Telephone:  404.885.3000
Facsimile:   404.885.3900

*Attorneys for Defendant Georgia Power Company*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that 14-point Times New Roman was used for this document and that it has been formatted in compliance with Local Rule 5.1.

This 9th day of March, 2021.


*s/ Kathleen Campbell*
Kathleen Campbell

## <u>CERTIFICATE OF GOOD FAITH ATTEMPT</u>
## <u>TO RESOLVE DISCOVERY DISPUTE</u>

I hereby certify in accordance with Fed. R. Civ. P. 26(c) and 37(a)(1), NDGa LR 37.1A, and Section III(e) of this Court's Standing Order that Georgia Power's counsel (Kathleen Campbell of Troutman Pepper Hamilton Sanders LLP) conferred with GATX's counsel (John Gekas of Saul Ewing Arnstein & Lehr LLP) on the issues outlined in this filing by phone (including on December 2, 2020 and January 13, 2021), letter (including on December 2, 2020 and January 4, 2021), and numerous e-mails. Georgia Power's efforts to meet and confer have been unsuccessful to date.

This 9th day of March, 2021.

By: *s/ Kathleen Campbell*
Kathleen Campbell

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on March 9th, 2021, I electronically filed the foregoing

**CONSOLIDATED/JOINT DISCOVERY STATEMENT** with the CM/ECF e-

filing system, which will automatically send email notification of such filing to

attorneys of record.

This 9th day of March, 2021.


*s/ Kathleen Campbell*
Kathleen Campbell

14