## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GATX CORPORATION,

        Plaintiff,

v.

GEORGIA POWER COMPANY,

        Defendant.

Civil Action File
No.: 1:19-cv-04790-AT

## DEFENDANT GEORGIA POWER COMPANY'S MEMORANDUM OF
## LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Georgia Power Company ("Georgia Power") files this memorandum in support of its motion for summary judgment on Plaintiff GATX Corporation's ("GATX") Complaint, which asserts a single breach of contract claim.

## I.    INTRODUCTION

In 2007, Georgia Power leased 160 steel railcars ("Railcars") from GATX to transport limestone and gypsum. For a decade, Georgia Power used the Railcars exactly as contemplated by the parties' lease. After Georgia Power returned the Railcars, ████████████████████████████. Nevertheless, GATX alleges the Railcars had corrosion damage when Georgia Power returned them and require a complete rebodying at a cost exceeding $11 million. GATX has not rebodied a single Railcar and ████████████████████████████.

1

Georgia Power is entitled to summary judgment because the undisputed evidence demonstrates (a) Georgia Power performed in compliance with the lease, (b) there is no evidence that Georgia Power caused the alleged damage or that GATX has even suffered damage, and (c) ████████████ end-of-lease payment Georgia Power made expressly in satisfaction of all remaining obligations under the lease, constituting an accord and satisfaction barring GATX's claim.

Accordingly, Georgia Power respectfully requests that the Court grant its motion and enter final judgment in favor of Georgia Power.  Alternatively, at a minimum, the Court should enter an order pursuant to Fed. R. Civ. P. 56(g) stating that the Railcars retained a value exceeding $58,000 each at the time Georgia Power returned them to GATX.

## II.   STATEMENT OF UNDISPUTED FACTS[1]

### A.   The Master Lease Contemplates Return of the Railcars in the Same Operating Condition, Ordinary Wear and Tear Excepted.

On March 8, 2004, GATX and Georgia Power entered into a Master Net Lease Agreement ("Master Lease") under which GATX agreed to lease railcars to Georgia

---

[1] Referenced deposition excerpts, deposition exhibits, certifications of business records, and declarations are attached in the Appendix to Defendant's Motion for Summary Judgment as required by the Section III(h) of the Court's Standing Order [ECF No. 6] and Local Rule 56.1.

Power in sets governed by subsequent "supplements."[2]   Section 8.2 of the Master

Lease provides:

> ***Lessee shall return the Cars to Lessor*** (i) ***in the same operating
> condition,*** complete with all parts (and with all parts working and not
> broken), equipment and accessories as when initially delivered to Lessee,
> ***ordinary wear and tear excepted***, (ii) in compliance with all FRA and
> AAR regulatory requirements, including the Interchange Rules, (iii)
> suitable for immediate use for the purposes set forth in the relevant
> Supplement, (iv) sufficiently clean and substantially free of graffiti, (v)
> Cleaned of Commodities, as defined in Section 8.5 below, and (vi)
> otherwise in full compliance with Section 6 hereof.[3]

**B.    Supplements 2 and 3 Permitted Georgia Power to Carry "Non-
Corrosive, Non-Placarded" Commodities in the Railcars.**

On October 1, 2007, GATX and Georgia Power executed Supplement Nos. 2

and 3 to the Master Lease ("Supplements 2 and 3").[4]   Under Supplement 2, Georgia

Power leased 75 open-top steel aggregate hoppers built by National Steel Car Limited

("NSC") in 2007,[5] which Georgia Power used at its Plant Bowen to carry limestone

and, very rarely, gypsum.[6]   Under Supplement 3, Georgia Power leased 85 open-top

---

[2] Defendant Georgia Power Company's Objections and Responses to GATX's First
Requests for Admissions ("GPC's Resp. to 1st RFAs"), No. 1; PX 1 (Master Lease).
[3] PX 1 at GATXvGP000011 (emphasis added).
[4] *Id.* at GATXvGP000027-33, GATXvGP000034-40.
[5] *Id.* at GATXvGP000027.
[6] Deposition of Southern Company Services ("SCS") Railcar Maintenance Manager
Michael Dunn as Georgia Power Company's 30(b)(6) Witness ("Dunn 30(b)(6)
Dep.") at 22:18-24, 24:3-13.   *See also* Defendant Georgia Power Company's
Objections and Responses to GATX's Second Requests for Admission ("GPC's Resp.
to 2nd RFAs"), Nos. 1-3.

steel aggregate hoppers built by NSC in 2007,[7] which Georgia Power used at its Plant

Wansley to carry limestone.[8]  Section 5 of Supplements 2 and 3 provides:

> Lessee will use the Cars for ***aggregate[9] service***.  Lessee represents that
> such lading is a ***non-corrosive, non-placarded commodity***.[10]

### C.    The 2012 Extension and 2014 Renewals Expressly Permitted Georgia Power to Carry Limestone and Gypsum in the Railcars.

On November 30, 2012, GATX and Georgia Power agreed to extend the terms

of Supplement 2 (from December 1, 2012 to November 30, 2014) and Supplement 3

(from January 13, 2013 to January 12, 2015) ("2012 Extension").[11]  On November

12, 2014, GATX and Georgia Power renewed Supplements 2 and 3 for additional 36-

month terms ("2014 Renewals").[12]  The 2014 Renewals provide:

> Permitted Commodity: Subject to Customer's responsibilities under
> Section 4 of the Car Services Contract, ***the cars on this Supplement may
> only be used to carry Gypsum and Limestone***, Broken or Crushed.[13]

---

[7] PX 1 at GATXvGP000034.

[8] Dunn 30(b)(6) Dep. at 22:18-24.  *See also* GPC's Resp. to 2nd RFAs, Nos. 4-6.

[9] Aggregates include rocks and other non-liquid granular materials, like limestone and gypsum, well-suited for transport in open-top hopper railcars (i.e., railcars that open on top and empty from the bottom).  Deposition of SCS Railcar Utilization & Contract Manager Chad S. Hewitt ("Hewitt Dep.") at 54:6-8; Deposition of Georgia Power Expert William M. Kane, III, Ph.D., P.E. (Kane Dep.) at 15:8-21.

[10] PX 1 at GATXvGP000027, GATXvGP000034 (emphasis added).

[11] *Id.* at GATXvGP000041-42.

[12] *Id.* at GATXvGP000043-50.  The Master Lease, Supplements 2 and 3, 2012 Extension, and 2014 Renewals are referred to collectively as the "Lease Documents."

[13] *Id.* at GATXvGP000043, GATXvGP000047 (emphasis added).

### D.    The Lease Documents Are Silent on Corrosion.

The Lease Documents contain no provisions specifically addressing corrosion of the Railcars.[14]  In lease negotiations, Southern Company, through its agent and subsidiary, Southern Company Services ("SCS"),[15] repeatedly rejected GATX's proposed corrosion language.[16] By July 2014, SCS communicated to GATX it would

---

[14] ███████████████████████████████████████████████████████████████; Deposition of GATX Vice President of Coal and Steel Jay Leadingham ("Leadingham Dep.") at 199-203, DX 40; Dunn 30(b)(6) Dep. at 59:11-13; Deposition of SCS Fuels Principal Christine Lewter as Georgia Power Company's 30(b)(6) Witness ("Lewter 30(b)(6) Dep.") at 30:22-31:4, 80:16-22, 142:19-20, 145:5-10; Deposition of SCS Railcar Analyst Cheryl Gulledge ("Gulledge Dep.") at 25:14-21; Hewitt Dep. at 23:6-12.

[15] GATX's commercial representative, Jay Leadingham, negotiated with SCS's transportation group on all of Southern Company's subsidiaries' contracts with GATX, including the Master Lease.  *See* Leadingham Dep. at 37:16-38:5.  Mr. Leadingham was the only GATX representative directly negotiating with Southern Company and its subsidiaries from 2008 forward.  *Id.* at 186:4-188:2.

[16] ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ No such language is included in the Lease Documents.  *See* PX 1.
██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

not accept language that made Southern Company or its subsidiaries responsible for railcar corrosion.[17]   And in a 2014 dispute with GATX under the Master Lease, Georgia Power responded to GATX's corrosion allegations indicating the alleged corrosion was ordinary wear and tear permitted by Section 8.2 of the Master Lease.[18] After Georgia Power made its position on corrosion liability clear, GATX executed the 2014 Renewals in November 2014.[19]

In 2016, GATX again asserted corrosion claims against Georgia Power—this time, pertaining to two sets of railcars governed by a lease executed by a predecessor lessor (Babcock & Brown Funding LLC) and later assigned to GATX ("Babcock and Brown Lease").[20]   The Babcock and Brown Lease explicitly provided "that corrosion damage is not considered ordinary wear and tear and that it is conclusively presumed

_____

███████████████████████████████████████████ DX 27, ██████. No such language is included in the Lease Documents.  *See* PX 1.

[17] ████████████████████████████████████ DX 8.

[18] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████ Hewitt Dep. at 37:8-40:4, PX Hewitt 2;
████████████████████████████████████████. In <u>April 2014</u>, Georgia Power responded that the alleged corrosion was ordinary wear and tear and, therefore, acceptable under the lease.  Leadingham Dep. at 99:2-102:21, DX 11; Hewitt Dep. at 40:22-41:22, PX Hewitt 3; Gulledge Decl., ¶ 4.  By <u>November 2014</u>, GATX had ceased pursuing any claim against or resolution with Georgia Power regarding the Supplement 5 railcars.  Gulledge Decl., ¶¶ 5-8.

[19] PX 1 at GATXvGP000043-50.

[20] Leadingham Dep. at 178-181, DX 30 at GPC_NDGA_0000011355; *id.* at 188-190, DX 35 at GPC_NDGA_0000011545.

that each Car was free of corrosion or other commodity-related damage on the applicable Lease Commencement Date for each Car."[21]  To resolve the dispute, the two sets of railcars at issue were moved to Supplements 7 and 8 of the Master Lease at issue in this action.[22]

In reaching this resolution, GATX repeatedly acknowledged that Georgia Power is ***not*** liable for corrosion under the Master Lease.

- 

- 

-  "[W]e were trying to provide [Georgia Power] with something that gave [it] comfort that – that we didn't have any teeth, like we normally we do, to pursue corrosion."  *Id.* at 201:18-21.

- "We would change the current lease and place these cars on a GATX Master lease that is silent on the corrosion language for your review."  *Id.* at 199-203, DX 40.

- 

---

[21] *Id.*
[22] Leadingham Dep. at 207:6-15.



**E.**        **Corrosion Is a Normal Process; All Metal Corrodes.**

Corrosion is a normal process that occurs when metal, including steel railcars, is exposed to the environment.[23]   Empty railcars exposed to the environment corrode.[24] ███████████ █ Georgia Power[26] have observed corrosion in steel railcars used to carry aggregate.

In particular, in *all* of the steel aggregate railcars ███████████████

---

[23] ███████████████████████████; GPC's Resp. to 1st RFAs, No. 7.

[24] ███████████████████

[25] ███████████████████

[26] Dunn 30(b)(6) Dep. at 35:18-19, 107:9-12.

[27] ███████████████

[28] ███████████████

[29] ███████████

[30] *See* PX 1 at GATXvGP000027, GATXvGP000034.

[31] ███████████████

████████████████████████████████████████████████████████

███████████████████████████████████

**F.** **Under Applicable DOT Regulations, Limestone and Gypsum Are "Non-Corrosive, Non-Placarded" Commodities.**

██████████████████ ████ GATX[34] testified, the term "non-corrosive, non-placarded commodity" is defined in Department of Transportation ("DOT") regulations. Limestone and gypsum are "non-corrosive, non-placarded commodities," as confirmed by the applicable Safety Data Sheets ("SDS").[35]   Even beyond DOT



[32]

[33]

[34]                                                  ; Deposition of GATX Manager of Field Inspection Lawrence Bank [retired] ("Bank Dep.") at 117:13-118:8, 121:12-16; Leadingham Dep. at 22:2-23:4.

[35]   Dunn GPC 30(b)(6) Dep. at 40:9-41:24, PX 10 at GATXvGP000255-60; Deposition of SCS Fuel Procurement – Fuel Oil, Limestone, Railcar Employee [retired] Larry Steven Pitts ("Pitts Dep.") at 17:17-18:11; *see* Carmeuse Certification

regulations, limestone and gypsum are known to be non-corrosive materials.[36]



### G.   Georgia Power Used the Railcars to Carry Limestone and Gypsum Until Returning Them to GATX in 2017 and 2018.

Georgia Power returned the Supplement 2 railcars to GATX on November 27, 2017 and the Supplement 3 railcars to GATX on May 21, 2018.[39]  Until immediately before their return, Georgia Power used the Railcars in aggregate service without issue.[40]  After their return, GATX conducted inspections of the Railcars, taking

---

of Business Records; Hanson Certification of Business Records; Lhoist Certification of Business Records; Vulcan Materials Certification of Business Records.

[36] Hewitt Dep. at 18:23-21:14; Pitts Dep. at 31:11-14.

[37] ; PX 1 at GATXvGP000043, GATXvGP000047.

[38] See Leadingham Dep. at 147:23-155:18, DX 25.

[39] DX 42 at GPC_NDGA_0000011104; Pitts Dep. at 69:9-21, PX 7 at 1.

[40] Dunn 30(b)(6) Dep. at 77:12-19; Deposition of Southern Company Services Railcar Specialist Harry Mullins [retired] ("Mullins Dep.") at 78:2-13.

corrosion readings of eight.[41]  During the inspections GATX claimed that the Railcars were in a consistent condition[42] and contained corrosion damage,[43] allegedly requiring rebodying at the cost of $70,650.56 per railcar (or $11.2 million total).[44] ███████████

███████████████████████████████████████████████████████

███████

Consistent with the position it took in prior corrosion disputes with GATX, Georgia Power responded that the alleged corrosion in the Supplement 2 and Supplement 3 railcars was ordinary wear and tear, not damage.[46]  On July 26, 2018, Georgia Power remitted a $115,674.38 payment ("End-of-Lease Payment") to GATX

---

[41] Bank Dep. at 166:25-167:11, PX 2; *id.* at 174:22-175:9, DX 1; *id.* at 179:18-22, PX 3; *id.* at 186:2-12, DX 2.  In measuring alleged corrosion and metal loss in the sample Railcars, GATX applied a "worst-case pit" methodology, whereby the GATX inspector selected the deepest visible pit in various railcar locations, ground the pit to create a flush surface for an ultrasonic thickness probe, and measured alleged metal loss. ████████████████████ Bank Dep. at 152:21-158:6.

[42] Bank Dep. at 180:14-183:4, PX 3 at GATXvGP000056.  *See also* Dunn 30(b)(6) Dep. at 46:8-13; Pitts Dep. at 67:17-69:4, PX 12 at GPC_NDGA_0000011047; *id.* at 69:22-70:13, PX 7 at 2.

[43] *See* PX 2 at GATXvGP000061; PX 3 at GATXvGP000057.

[44] ███████████████████████ DX 67; ███████████ DX 72.

[45] ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

[46] *See* DX 42 at GPC_NDGA_000001105.

with the statement: "With this payment, Lessee has satisfied its end-of Lease obligations for the Bowen Cars and Wansley Cars and does not owe Lessor anything further under the Lease."[47] ███████████████████████████████

### H.   GATX ███████████████████████████████████ After Georgia Power Returned Them to GATX.

Starting ████████████ GATX leased 90 of the Railcars to ████████████

████████████████████████████████████████████

███████████████    ████████████████████████████

█████████████████████████   ██████████████████████

██████████████████████████████████   ████

███████████████████████████████████████████

████████████████████████████████   ██████

---

[47] *Id.* (defining "Bowen Cars and Wansley Cars" as the Railcars).

[48] ██████████████████████████ DX 42.

[49] ████████████████████████████████████████; Plaintiff GATX's Objections and Answers to Defendant Georgia Power Company's First Set of Interrogatories ("GATX's Resp. to 1st Interrogs."), No. 7.

[50] ████████████████████████████████████████
████████████      ██████████████████████████████

[51] ████████████████████████████████████████████

[52] ███████████████████████████████████████████.

[53] ████████████████████████████████████████████



**I.    The Railcars Have Not Been Rebodied and Retain Their Full Discounted Value.**



 In response, GATX provided the full discounted values for 50 of the Railcars—ranging from $58,222 to $59,010.[65] Similarly, in a March 2020 discovery dispute in this action, GATX demanded Georgia purchase Railcars at a price of $58,821.91 to $59,386.53 (or place an equivalent amount in escrow) in order to conduct metallurgical testing.[66]



[65] ███████ DX 59.
[66] March 16, 2020 Consolidated/Joint Discovery Statement ("March 2020 Discovery Statement") [ECF No. 21] at 8-9.

### III.   ARGUMENT AND CITATION OF AUTHORITY

Under New York law,[67] the material elements of a breach of contract claim are: "(1) the parties entered into a valid agreement, (2) plaintiff performed, (3) defendant failed to perform, and (4) damages." *VisionChina Media Inc. v Shareholder Representative Servs., LLC*, 967 N.Y.S.2d 338, 345 (N.Y. App. Div. 1 Dept. 2013). The undisputed evidence here shows (1) Georgia Power performed in accordance with the Lease Documents, (2) GATX has not suffered damage, and (3) GATX's claim is barred by accord and satisfaction.

**A.   Georgia Power Performed Under the Lease Documents.**

**1.   Georgia Power Returned the Railcars to GATX in a Condition Consistent with Ordinary Wear and Tear.**

Ordinary wear and tear is "[t]he deterioration in the condition of the [railcar] measured from the [railcar's] condition at the inception of the [lease], due to the ordinary and reasonable use of the [railcar] as evaluated with reference to the intended use and age of the [railcar]." *Weeks Marine v. John F. Picone, Inc.*, No. 97 Civ. 9560 (SAS), 1998 U.S. Dist. LEXIS 15053, at *18-19 (S.D.N.Y. Sept. 24, 1998).

The Master Lease requires: "[Georgia Power] shall return the Cars to [GATX] . . . in the same operating condition . . . ordinary wear and tear excepted."[68]

---

[67] New York substantive law applies.  PX 1 at GATXvGP000017, § 13.6.
[68] PX 1 at GATXvGP000011.

Georgia Power leased the Railcars from GATX to carry aggregate, including limestone and gypsum, and used the Railcars for that purpose until immediately before returning them to GATX.[69]  The undisputed evidence demonstrates that metal, including steel railcars, naturally corrodes.[71]

Georgia Power performed in accordance with the Master Lease by (1) using the Railcars to carry limestone and gypsum as permitted by the Lease Documents and (2) returning the Railcars to GATX in a condition that is normal and ordinary, with reference to similar-vintage steel railcars used to carry aggregate.

### 2. The Limestone and Gypsum Georgia Power Carried in the Railcars are "Non-Corrosive, Non-Placarded" Commodities.

"While words are generally assigned their ordinary meaning, where a word has attained the status of a term of art and is used in a technical context (here, a lease), the

---

[69]   Dunn 30(b)(6) Dep. at 77:12-19; Mullins Dep. at 78:2-13; PX 1 at GATXvGP000027, GATXvGP000034, GATXvGP000043, and GATXvGP000047.
[70]   *See supra* footnotes 49 and 51 through 55 and associated text.
[71]   ▉▉▉▉▉▉▉▉▉▉▉▉▉; GPC's Resp. to 1st RFAs, No. 7.
[72]   *See supra* footnotes 27 through 32 and associated text.

technical meaning is preferred over the common or ordinary meaning [Cit.]."
*Madison Ave. Leasehold, LLC v. Madison Bentley Assocs., LLC,* 811 N.Y.S.2d 47, 52
(N.Y. App. Div. 1 Dept. 2006) (citation omitted).   Furthermore, contracts are
construed in light of the law at the time of contracting.  *See In re Currency Conversion
Fee Antitrust Litig*., 264 F.R.D. 100, 118 (S.D.N.Y. 2010).

The phrase "non-corrosive, non-placarded commodity" is defined by DOT
regulations.[73]   Limestone and gypsum are non-corrosive, non-placarded
commodities.[74]   Under DOT regulations, railcars transporting hazardous materials—
including corrosive commodities—are required to have placards affixed on both
sides.  *See* 49 CFR §§172.500, 172.504 &172.508.  The "Hazardous Materials Table"
identifies corrosive commodities requiring placarding.   *See* 49 CFR § 172.101.
Limestone (calcium carbonate) and gypsum (calcium sulfate dihydrate) do not appear
on the Hazardous Materials Table.[75]

The Court should not interpret a single word in the phrase "non-corrosive, non-
placarded commodity" in isolation, nor should the Court interpret the phrase "non-
corrosive, non-placarded commodity" in isolation from the rest of the Lease

---

[73] ███████████████████████████████████████████████; Bank Dep. at 117:4-118:8, 121:12-16; Leadingham Dep. at 22:2-23:4.
[74] ███████████████████
[75] *See supra* footnote 35 and associated text.

Documents.  *See AGCS Marine Ins. Co. v. World Fuel Servs.*, 187 F. Supp. 3d 428, 453 (S.D.N.Y. 2016).  Instead, the Court "should construe [the Lease Documents] in a manner that avoids inconsistencies and reasonably harmonizes [their] terms." *Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 441  (S.D.N.Y. 2018) (citations omitted).  There is no inconsistency between the general term permitting the Railcars to carry "non-corrosive, non-placarded commodit[ies]" and the specific term permitting "Gypsum and Limestone," but even if there were, the specific term controls.  *See In re Lehman Bros. Holdings Inc.*, 761 F.3d 303, 312-13 (2nd Cir. 2014).  GATX's contention that Georgia Power breached the Lease Documents by carrying limestone and gypsum impermissibly renders the Permitted Commodities section of the 2014 Renewals[76] (specifically permitting the Railcars to carry limestone and gypsum) meaningless.  *Stonewall Contracting Corp. v Long Island R.R. Co.*, 129 N.Y.S.3d 433, 437 (N.Y. App. Div. 2 Dept. 2020) ("an interpretation which renders language in the contract superfluous cannot be supported") (citation omitted).

In short, Georgia Power used the Railcars precisely as permitted by the Lease Documents.

---

[76] PX 1 at GATXvGP000043, GATXvGP000047.

### 3.    The Court Should Not Imply Corrosion Liability Where the Lease Documents Are Silent on Corrosion.

"[U]nder New York law, 'courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Spanski Enters. v. Telewizja Polska*, S.A., 581 Fed. Appx. 72, 73 (2nd Cir. 2014) (quoting *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (N.Y. 2001)). This is especially true where "the record evidences that the parties may have intentionally omitted" a term from their contract.  *Reiss*, 97 N.Y.2d at 200.

Had these sophisticated commercial parties intended to make Georgia Power liable for corrosion—or to agree that corrosion was not ordinary wear and tear—they were perfectly capable of doing so.  For instance, the parties could have included explicit language in the Lease Documents ███████████████████████ ████████████████████████████  ███████████ ████████████████████  The Lease Documents include no such language. Instead, they are silent on corrosion.[79]  The Court should not imply contractual terms

---

[77] *See supra* footnote 16 and associated text.
[78] *See supra* footnotes 20 and 21 and associated text.
[79] ████████████████████; Leadingham Dep. at 199-203, DX 40; Dunn 30(b)(6) Dep. at 59:11-13; Gulledge Dep. at 25:14-21; Hewitt Dep. at 23:6-12; Lewter 30(b)(6) Dep. at 30:22-31:4, 80:16-22, 142:19-20, 145:5-10.

the parties did not agree to and that Southern Company and Georgia Power specifically rejected.

> ### 4. The Undisputed Evidence of the Parties' Course of Dealing Confirms Georgia Power Is Not Responsible for Corrosion.
>
> There is no requirement that an agreement be ambiguous before evidence of a course of dealing can be shown, nor is it required that the course of dealing be consistent. Restatement (Second) of Contracts, § 223 (1981) cmt. b. We have extended the course-of-dealings doctrine "to include evidence that a party has ratified terms by failing to object," provided there is "an indication of the common knowledge and understanding of the parties." *See New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997).

*Ward v. Nat'l Geographic Soc'y*, 284 F. App'x. 822, 823-24 (2nd Cir. 2008) (affirming summary judgment for defendant on breach of contract claim, relying on evidence of parties' course of dealing). "Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence." *Fed. Ins. Co. v. Americas Ins. Co.,* 691 N.Y.S.2d 508, 512 (N.Y. App. Div. 1 Dept. 1999) (quoting *Old Colony Tr. Co. v City of Omaha*, 230 U.S. 100, 118 (1913)).

The parties' course of dealing confirms Georgia Power is not liable for corrosion under the Master Lease. In lease negotiations, Southern Company repeatedly rejected GATX's attempts to make Southern Company or its subsidiaries

(including Georgia Power) liable for corrosion.[80]  By July 2014, Southern Company
had informed GATX that it would not include corrosion language in its subsidiaries'
leases.[81]  After Georgia Power responded to GATX's February 2014 corrosion claim
pertaining to the Supplement 5 railcars under the Master Lease (indicating that the
alleged corrosion damage was, in fact, ordinary wear and tear in compliance with
Section 8.2 of the Master Lease), GATX ultimately abandoned its claim and executed
the 2014 Renewals of the Railcars.[82]  And in resolving the 2016 corrosion dispute
under the Babcock and Brown Lease, GATX repeatedly represented to Georgia Power
that the Master Lease was "silent on corrosion" and imposed no liability on Georgia
Power for corrosion.[83]  This undisputed evidence confirms Georgia Power is not liable
for alleged corrosion in the Railcars and did not breach the Lease Documents.

### B.    GATX Has Not Suffered Damage.

GATX is required to put forth non-speculative evidence demonstrating damage
as a material element of its breach of contract claim.  *See Int'l Gateway Exch., LLC
v. W. Union Fin. Servs.*, 333 F. Supp. 2d 131 (S.D.N.Y. 2004) (granting summary

---

[80] ███████████████████████████████████████

[81] Leadingham Dep. at 79:18-81:25, DX 8.

[82] *See* Leadingham Dep. at ██████████; *id.* at 99:2-102:21, DX 11; Hewitt Dep. at 37:8-40:5, PX Hewitt 2; *id.* at 40:22-41:22, PX Hewitt 3; Gulledge Decl., ¶¶ 3-8.

[83] ███████████████████████████████████████; *id.* at 199-203, DX 40; *id.* at 201:18-21; ███████████████████████████; Lewter 30(b)(6) at 80:16-22, 142:19-20, 145:5-10.

judgment on breach of contract claim for failure to establish damages recoverable under New York law); *Am. Home Prods. Corp. v. CAMBR Co.*, No. 00 Civ. 2021, 2001 U.S. Dist. LEXIS 716 (S.D.N.Y. Jan. 30, 2001) (same); *Pay Tel Sys. v. Seiscor Techs., Inc.*, 850 F. Supp. 276, 279 (S.D.N.Y. 1994) (same).

Specifically, GATX is required to point to evidence demonstrating Georgia Power caused its alleged damages. "Under New York law, 'causation is an essential element of damages in a breach of contract action[.]'" *Wilder*, 310 F. Supp. 3d at 445 (citation omitted) (granting summary judgment on breach of contract claim for failure to show breach proximately caused damages). *See also Cooper v. Gottlieb,* No. 95 Civ. 10543 (JGK), 2000 U.S. Dist. LEXIS 12936, at *19-21 (S.D.N.Y. Sept. 8, 2000) (same).

GATX alleges it has been damaged by Georgia Power's return of the Railcars with corrosion damage in breach of the Master Lease, necessitating a complete rebody of the Railcars at a cost of $70,650 per railcar[84]—just shy of the Railcar's 2007 purchase price ████████████ and exceeding the current value of the Railcars by approximately $12,000 per railcar.[85] ████████████████████████

---

[84] ██████████████████████ DX 67; ████████ DX 72.
[85] ████████████████████████████████ DX 91.



By GATX's own admission, the Railcars retained their full discounted value after Georgia Power returned them to GATX, in excess of $58,000 per railcar.[90]

Because GATX has not put forth any evidence establishing damages or that Georgia Power caused the alleged damages, summary judgment is proper.

### C.   GATX's Claim Is Barred by the Doctrine of Accord and Satisfaction.

"For the doctrine of accord and satisfaction to operate, there must be a dispute as to the amount of a liability, and one party must knowingly accept from the other party a lesser sum than what he claims he is owed." *Carrion v. United Airlines, Inc.*, No. 13-CV-4875 (NGG) (RER), 2014 U.S. Dist. LEXIS 104943, at *7 (E.D.NY. July 30, 2014) (granting defendant's motion for summary judgment based on accord and

---

[86] ████████████████████████████████████████
[87] ████████████████████████████████
[88] ████████████████████
[89] *See supra* footnotes 49 and 51 through 54 and associated text.
[90] ████████████████████████████████ DX 59; March 2020 Discovery Statement at 8-9.

satisfaction defense).  Specifically,

> [W]here an amount due is in dispute, and the debtor sends a check for less than the amount claimed, and clearly expresses his intention that the check has been sent as payment in full the cashing or retention of the check by the creditor operates as an accord and satisfaction of the claim.

*Id.* (citation omitted).

As of July 26, 2018, there was a dispute between GATX and Georgia Power about how much Georgia Power owed GATX under the Lease Documents.  GATX claimed the Lease Documents required Georgia Power to pay to have the Railcars rebodied at a cost of $70,650.56 per railcar or $11.2 million total.  Georgia Power disputed GATX's claim and submitted the $115,674.38 End-of-Lease Payment with the unequivocal statement: "With this payment, Lessee has satisfied its end of Lease obligations for the Bowen Cars and Wansley Cars and does not owe Lessor anything further under the Lease."[91]

Because the evidence demonstrates the elements of accord and satisfaction have been satisfied under New York law, GATX's claim for breach of contract fails as a matter of law.

---

[91] DX 42.

[92] ███████████████████ DX 42.

## IV.   <u>CONCLUSION</u>

Georgia Power complied with the Master Lease and returned the Railcars "in the same operating condition … ordinary wear and tear excepted."  The undisputed evidence demonstrates Georgia Power used the Railcars to carry limestone and gypsum, exactly as permitted under the Master Lease.  The absence and rejection of any language in the Master Lease imposing liability on Georgia Power for the normal process of corrosion, which occurs in all metals, and GATX's own admissions and course of dealing with Georgia Power and SCS confirm that any corrosion in the Railcars constitutes "ordinary wear and tear" under the Master Lease.  Moreover, GATX has never rebodied the cars, ████████████████████████████ ████████████████████████████ has admitted that the Railcars retained their full discounted value of over $58,000 each after being returned by Georgia Power.  GATX's alleged damages thus are unrecoverable and unsupported by the record.  Finally, ████████████ end-of-lease payment made by Georgia Power expressly in satisfaction of all remaining obligations under the lease, constituting an accord and satisfaction barring GATX's claim.

Accordingly, Georgia Power respectfully requests that the Court grant its motion and enter an order granting judgment in favor of Georgia Power, or finding the Railcars retained a value exceeding $58,000 each upon return.

Respectfully submitted this 2nd day of September, 2021.

*s/ Thomas E. Reilly*
Thomas E. Reilly, Georgia Bar No. 600195
tom.reilly@troutman.com
Kathleen Campbell, Georgia Bar No. 839699
kathleen.campbell@troutman.com
Thomas Bailey, Georgia Bar No. 194516
matt.bailey@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street, NE
Atlanta, GA  30308-2216
Telephone:  404.885.3000
Facsimile:   404.885.3900

*Attorneys for Defendant Georgia Power Company*

## **CERTIFICATE OF COMPLIANCE**

This Memorandum of Law complies with Local Rule 5.1 and was prepared using a 14-point Times New Roman font.

This 2nd day of September, 2021.

*s/ Thomas E. Reilly*
Thomas E. Reilly

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 2, 2021, I electronically filed the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY**

**JUDGMENT** with the CM/ECF e-filing system, which will automatically send email

notification of such filing to attorneys of record.

This 2nd day of September, 2021.

*s/ Thomas E. Reilly*
Thomas E. Reilly
